## No. 26727

## The People of the State of Colorado v. David McClure Fenninger

(552 P.2d 1018)

Decided August 3, 1976.                    Rehearing denied August 23, 1976.

J. D. MacFarlane, Attorney General, Jean Dubofsky, Deputy, Edward G. Donovan, Solicitor General, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Peter H. Ney, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Fenninger was convicted of the unlawful sale of a narcotic drug with intent to induce or aid another to unlawfully use or possess the drug[1] and conspiracy to commit such violation.[2] He argues that his conviction should be reversed because the evidence totally fails to show that he *sold* the narcotic drug, or that he aided and abetted the *sellers* in consummating such a sale. We agree and therefore reverse the judgment of the trial court.

The prosecution's case consisted chiefly of the testimony of a government undercover agent and two codefendants who had pled guilty prior to trial to selling narcotics. Their testimony established the following chain of events which resulted in the unlawful sale of a pound of morphine.

Kenny Brown, an undercover agent for the Colorado Bureau of Investigation, met the defendant outside of a bar in Glenwood Springs and represented himself as an underworld figure who wanted to purchase large quantities of narcotics. The record does not show why the agent approached the defendant. The defendant represented to the agent that he

---

[1]C.R.S. 1963, 48-5-20(1)(a) and (c). Now section 12-22-322(1)(b), C.R.S. 1973.
[2]C.R.S. 1963, 48-5-20(1)(i). Now section 12-22-322(1)(h), C.R.S. 1973.

had some connections in town and would try to set up a meeting with these people and the agent for the purpose of buying some "dope." Over the course of several months, defendant introduced Brown to several contacts from whom Brown purchased drugs.

Subsequently, the sale which is the subject of defendant's prosecution occurred. Defendant, a student at Colorado Mountain College, was contacted by another student, Kim Robert Magness, who stated that he had previously agreed with Larry Shapiro and Ronald L. Landesberg to help them find a buyer for what they thought was about two pounds of heroin. Defendant told Magness that he might have an interested buyer. Shortly thereafter, defendant talked to the agent by telephone. The agent indicated that he was interested in buying the heroin and told the defendant that he had $90,000 available for the deal. Defendant relayed this information to Magness, and the defendant by alternatively meeting with the sellers and agent Brown, eventually arranged terms that were agreeable to both the suppliers and the agent.

The defendant and the agent agreed between them that defendant would receive from the agent at least $4,000 for every pound of heroin purchased, and possibly more, depending on its quality.

The defendant then accompanied the agent and the suppliers to a canyon outside of Glenwood Springs. There, the agent gave the suppliers $36,000 for one pound of heroin, which one of the suppliers had just unearthed from the place where he had previously stashed it. Although present during these events, defendant never possessed, transferred, or handled the purchase money or the drugs. Also, the record reveals that he never knew anything about the location of the drugs before delivery to the agent. As soon as the exchange was over, the agent arrested the defendant and the suppliers. The alleged heroin was later tested and found to be morphine, also an illicit narcotic.

At trial, Magness and Landesberg both testified that defendant did not know them nor did he ever meet them before the purchase negotiations. They also testified that they regarded defendant as the buyer's representative throughout the sales negotiations.

Defendant claims that the foregoing evidence is insufficient to sustain his conviction for selling a narcotic drug inasmuch as it only proves that he was acting as agent for the undercover police agent who was the purchaser of the drug. In effect, he relies on the so-called "procuring agent" defense of which various federal courts have been the chief proponents. *See, e.g.*, *United States v. Marquez*, 511 F.2d 62 (10th Cir. 1975); *United States v. Pierce*, 162 U.S. App. D.C. 170, 498 F.2d 712 (1974); *United States v. Prince*, 264 F.2d 850 (3d Cir. 1959). The legal theory behind this defense is that a defendant, as an exclusive agent for the buyer, is a principal in or a conspirator in the *purchase* rather than the *sale* of the contraband, and as such, the defendant, like the buyer, cannot be convicted of selling

the narcotic, nor can he be convicted of conspiring to sell. *Cf., United States v. Masullo*, 489 F.2d 217 (2d Cir. 1973). *See also State v. Osburn*, 211 Kan. 248, 505 P.2d 742 (1973) which applies and discusses the procuring agent defense where a defendant is charged with selling narcotics.

■ This court has previously held that the procuring agent defense is inapplicable in Colorado where a procuring defendant is charged with "dispensing" illicit drugs. In such cases, the proscribed activity is the transfer and delivery of the drugs rather than their sale. *People v. Dinkel*, 189 Colo. 404, 541 P.2d 898 (1975). However, this court has not, as yet, disavowed this defense in cases where a defendant is charged exclusively with *selling* narcotics as in this case.

■ Although the facts here do not fall squarely within the "procuring agent" rule because defendant never actually controlled or delivered the narcotics, we hold that its rationale applies at least in cases where, as here, the defendant is the exclusive negotiating agent for the buyer. However, we do not mean to intimate the view that a defendant, who acts as an independent broker between buyer and seller, can never be found guilty of complicity with the seller. In such a case, the defendant, by actively seeking out buyers and sellers on his own initiative, can be properly regarded as aiding and abetting a sale. The jury was correctly instructed that if they found that defendant acted exclusively on behalf of the agent, and not for the sellers, they would have to find him not guilty. The jury returned a verdict of guilty against defendant. However, we hold that all the evidence, even when viewed as a whole and in the light most favorable to the prosecution, is wholly insufficient and cannot support the jury's verdict on the charges involved here of selling narcotics. *See People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973). Under the evidence here, the trial court should have entered a judgment of acquittal at the conclusion of the prosecution's case.

The evidence overwhelmingly shows that defendant acted solely at the request of the buyer and as the representative of the buyer when meeting with the suppliers. The defendant was prompted by the buyer to introduce him to potential suppliers. The defendant was also to be paid directly by the buyer, the undercover agent here, for his services in procuring a purchase. The defendant was not acquainted with the suppliers before the purchase negotiations. He did not know where the drug was stashed. The suppliers regarded defendant as the buyer's representative. The only evidence which arguably links defendant to the suppliers was that he was a conduit for messages from them to the buyer, a fact which is inconsequential, since relaying terms of the deal was part of his function as agent for the buyer.

The judgment of the trial court is reversed and this cause is remanded with directions to enter a judgment of acquittal.

MR. JUSTICE KELLEY dissents.